May it please the court I'm James Laughlin and I represent the appellant Nguyen Ho and with the court's permission I'd like to reserve two minutes of my time. How much? Two minutes of my time, but I'll keep an eye on the clock. Okay, thank you. Can I consent not to search the vehicle? Yeah, I'll just talk to this guy right here, meaning the searching officer. Any typical reasonable person hearing that would have interpreted as Mr. Ho withdrawing his consent and the officer acknowledging that. With respect, counsel, I think you take that way, way, way too far, but let me ask you this. At best, is it not an ambiguous inquiry? No, not at all, your honor. It was not ambiguous if you just look at Mr. statement, Mr. Ho's statement in isolation, and it certainly wasn't ambiguous when you consider the officer's response. The officer clearly acknowledged, yes, and I will do something in response to your request. I thought he said, you know, he said, we got to talk to this guy over here, the guy who was searching the car. Then your client said nothing further. They were sitting over there. He didn't say, wait a minute, I want to talk to that guy. He didn't say anything else. He raised the question twice, and the guy said, the officer said, you got to talk to this guy over here. That was the end of it, right? Well, first of all, there's three things here. I think, first of all, the officer said, I will talk, we got to talk to this guy over there, not that you have to talk to him. So it wasn't suggesting that you have to get up and talk to this officer. But he did make it clear that Mr. Ho had to do something, right? I strongly disagree with that, because, in fact, it's the contrary. It's yes, you do have the right to do that, and I will now take the steps to effectuate that. He didn't say that. Well, your honor, to the extent that you mentioned, well, he didn't say anything after that point, I think you're buying into the government's argument that once somebody says something that is a request to withdraw consent, and the officers don't respond to it, he's under some burden to say something further, and if he doesn't, that somehow retroactively makes this statement ambiguous. Let's go back to the beginning. I think, obviously, this is one of those situations where the facts really aren't in dispute. We've got a whole thing, it's all down there in video. No question is there that your client unambiguously consented to the search, right? The only question is whether he withdrew it, right? Withdrew it, yes. Okay, so he unambiguously consented to the search, no problem there at all. The question is whether he unambiguously withdrew it. The question is whether a reasonable person, officer in this case, who heard it would understand that. Right. And if there's ambiguity, under an equal dignity rule, doesn't that fail from your client's perspective? If there was ambiguity, yes, but I think your Honor raises a good point. The Florida versus immunotest is a test that applies both in determining whether somebody granted consent and whether they withdrew consent. It's the same exact test, so it can't be applied liberally when the government wants to use it, right? So we read on that. So let's go back to what your Honor said when you said he unambiguously granted consent. What the officer said was, hey, can I check? And he said, yeah. Now, there's case law where people have made arguments in this court and said, we need to talk to that guy over there. No, no, I'm talking about the original granting of consent. I'm saying if we start looking rigidly and hyper-technically and with the unreasonable grammatical precision of an officer, Don, and we apply that same test of the granting of consent, then I think that you would say, well, maybe he didn't grant consent. But we don't do that, because this court has held that... Let me just read you what the transcript says. The first officer asked your client whether there were, and quotes, any drugs or anything illegal inside the car. Mr. Ho responded, no. The officer then asked Ho, is it okay if I check? Ho responded, yes. That's in the video at 1025. Right. That's unambiguous, right? He didn't say, well, maybe if the sun's up. He said, okay, it's all right. Yes. It's unambiguous because of this court's cases in Taylor and in McWheeney when it's rejected, defendants who came in here and say, well, let's look at that at a very hyper-technical way. When he said he wanted to look at the car, that's not the same as a search. Or when he said he wanted to check the car, that's not the same as a search. He didn't say that. He wanted to see if there were any drugs or anything illegal inside the car. Right. But what I'm saying is this court, when it's in the government's favor, is very generous in applying that HEMENO standard, and I think it needs to be just as generous and look at it like a reasonable person when the defendant seeks to withdraw his consent. And I think that any doubt about this is dispelled by the court's precedent on the right to counsel cases. But that's an exactly the same test. If the court can articulate to me how that test is any way different, they both look at what a reasonable person or reasonable officer would have interpreted what a defendant said. But do you have any cases that says that an invocation of the right to counsel is the same as a right to consent to search? It's exactly the same. That's what you're saying, right? No, I'm not saying the rights are the same. What I'm saying is the government doesn't dispute that the tests are materially indistinguishable. And so what we're coming down to about whether he withdrew consent is, how does a reasonable person interpret what was said? And in that context, the cases ask exactly the same question about similar phrases, albeit in the context of the right to counsel, are strongly relevant, if not binding precedent. Let me ask you this, and I don't mean to dominate this conversation, because my colleagues are really smart. They have lots of good questions, I'm sure. But the 8th Circuit, the 7th Circuit say that a withdrawal of consent of this type must be unequivocal. Do you agree that this was not an unequivocal withdrawal? No, of course not. Because all those cases, when they use the word unequivocal, and again, this is something the government doesn't dispute, unequivocal doesn't add anything to the immunotest. Unequivocal is a shorthand for the immunotest, just like it's a shorthand for the Davis test that applies to right to counsel cases. There is nothing in the case law that suggests that you have to satisfy Hameno, and in addition, you have to do something that's unequivocal. If it satisfies Hameno, it's unequivocal, it's unambiguous, it's clear. There's no dispute about that. Can I ask you about the standard review here? Yes. Isn't the district court's determination that this was not an unambiguous withdrawal a factual finding that we need to review for clear error? Not at all. And I point again to the court. I discussed in detail all the principles that go into determining what standard review applies, but I want to start with the idea that when the court has expressly stated in the context of invocations of the right to counsel during police interrogations, they've said the words used, the exact words used, is a factual finding and we would defer to that for clear error. But whether those words actually invoke the right to counsel is a purely legal determination review de novo, and there's no principled reason for doing anything differently in this context. But why does that make sense here? Because how the words would be understood is a product, and I think you make this argument quite effectively, it's a product not just of what the words were, but of tone and context and sort of the surrounding facts about them. So it's not just a we have to undertake a contextual inquiry. And that, doesn't that make it seem more like a factual finding? I don't think so. If it did, it would apply exactly to this Court's precedent saying that's not what you do in assertion of right to counsel cases. So if you're going to apply that standard here, the court would have to explain why it's doing something completely different in completely analogous circumstances in there, because the assertion of the right to counsel is the same thing. It's always going to, it could depend on tone, it could depend on various factors. Keep in mind it's always an objective standard, so we don't care what the particular officer or the particular defendant meant. It's an objective standard. But once, and but again, particularly here where everything's recorded, there is no, nothing that's disputed of like that. Everything is on tape. Well, but there are a lot, I mean, there is sort of a modern temptation now that we have tapes of a lot of things for us to substitute our judgment for that of the district court, but the mere fact that there's a video doesn't necessarily mean that a factual finding isn't a factual finding anymore, because we can also look at the video, does it? Right, I believe there have been cases where the court has said it will help, that sometimes the tape can obviate the need to defer to factual findings, but I think what's more important is the ultimate question is a blending, mixed question of law and fact. And here what you have are undisputed facts as they apply to an undisputed legal standard, and that is something that the court should review de novo. But I also want to add that like, even if you say you want to say clear error, you're still looking at the same undisputed facts, you're still applying the law, and if you look at the law and say the court reached the wrong legal conclusion, then that's, you have a definite and firm conviction that it made a mistake and it committed clear error. So I don't think it should make a difference, but if it does make a difference, the court should either recognize that the de novo standard applies or seek on-bond review of that, because I think it's a very important issue. Can I bring you back to the timeline, because I think there might be a little bit of confusion of the timeline here. Am I right that the parties stipulated that this statement, can I withdraw consent, was made almost five minutes before the search began? Yes, yes. So it's, he gives consent to search, two minutes pass, he has the conversation that we're relying on is for the withdrawal, and then initial four minutes and 50 seconds pass before the search commences. Thank you. I see I'm way over my time. You are. Let's see how good, we may give you a little rebuttal time, okay? Let's hear from the government. Good morning, may it please the court, Roslyn Wang on behalf of the United States. To go to Judge Miller's point, there, the line of cases that the line of cases. Can you speak up a little bit, please? We have a little microphone problem today, so. Yes, your honor. Is that better? It's better. Okay. The SHI-BOO line of cases about the standard of review don't apply here. Those are about whether certain actions as a general rule can give rise to implied consent. And that's because appellate courts are just as well-positioned as district courts to make a general rule applicable to a wide class of cases. That's not the situation here. There was a very specific set of circumstances the district court had to look at. How was a question worded? What was the context? What was said immediately before and after? Where was defendant sitting? How was he treated? And the district court ruled, given all of the circumstances, that the defendant's question was ambiguous. Counsel, your worthy opponent takes the position, if I understood him correctly, that we analogize the cases involving requests for counsel to, in this case, the request to search. What's the government's position? Are they analogous? Do they have any relevance to each other for purposes of our analysis here? They both use an objective standard, and they both use the clear and unequivocal language as a test. There was one significant difference, which the Supreme Court talks about in the Schneckloth case, which is that under the Sixth Amendment standard, you're in a situation where custodial interrogation is inherently coercive. And so they do, there is language about, that there, there's the stricter standard of knowing an intelligent waiver in the Sixth Society wants to encourage consent searches. And so the quote is, unlike constitutional, excuse me, unlike constitutional guarantees that protect a defendant at trial, like the right to counsel, it cannot be said that every reasonable presumption ought to be indulged against voluntary relinquishment. But even if we're just applying sort of the ordinary standards of how people ordinarily use English, I mean, if you go to a restaurant and you order the fish, and then a minute later, you say to the waiter, can I get the chicken instead? And he says, yeah, I gotta check with the chef. You'd be very surprised if somebody came back with fish, wouldn't you? So the defendant, like in that situation, was not just saying, I want the fish. He was asking, do I, am I allowed to change my order, right? Am I allowed to? He said, you know, can I, I mean, he said, can I, can I consent not to search, or can I withdraw consent, right? I mean, I think there's two different things. If you, if the waiter asks what you wanna order and you say, can I have a hamburger? That means I want a hamburger. But if you said, can I sit here? That would be, am I allowed to sit here? And we know from what the defendant argued in the district court that he didn't know what his rights were. Wait, sorry. So let's change the hypo slightly. Sure. So the menu says, fish comes with fries. And you say, can I have rice instead of fries? I think you're asking, can I have rice instead of fries? Like, does this restaurant have rice? Or do you let me have rice? But you're also asking for the rice. And wouldn't anyone assume you're ordering rice at that point? So I think this is where the diner analogy stops being useful, is that in the cases, in the Sixth Amendment context, if a defendant is asking just for a clarification of his rights, like in the Younger case, which is the Ninth Circuit case, if I'm right, I can have a lawyer present through all this, right? So he's asking a clarification of his rights. The law in the next step of presuming that, yes, because you have that right, he's necessarily asking right there for a lawyer. So now you are using the lawyer cases as an analogy. So we either have to use them or not use them. But it seems like that maybe is distinguishable, because it seems like he really knows that he has this right and is articulating it in a more... I mean, the record in the district court shows that the defendant did not know what his rights were. In his motion to suppress, he said that it was a request to withdraw consent if permitted by law to do so. Any uncertainty Ho expressed pertained to his lack of legal knowledge concerning his rights. And that's at ER 8. But isn't that the same thing as the rice? It's like, if you have rice, I would like the rice. So isn't it like, if I can... Why does it matter if he doesn't know for sure? He's still trying to withdraw consent. And in fact, he is allowed to. What I'm saying is, in those... The case law does not then say, yes, if you want the rice, then I'm just going to assume that you're asking for the rice right now. It stops there. In that case law, the answer is, yes, you have that right. It is then incumbent upon the defendant to then make a clear and unequivocal claim that he then wants that item right now. So in the diner context, that may be true. But in what case says that? We have cases that say you can consent to search by just nodding. Maybe you're nodding because your head is twitching and there's a bug or something. We say a reasonable person would interpret this, and I'm really having trouble understanding where the case law parses it so finely, if the consent case law is pretty general about how a reasonable person would understand this. And again, I think it comes down to you have to make that clear and unequivocal statement. I think if you look at the language in the Seventh Circuit case of Lord versus Duckworth, which is, again, a Sixth Amendment case, I can't afford a lawyer, but is there any way I can get one? Even if the answer to that is yes, that question is still not a statement that that person wants a lawyer now. But our court, in equivalent things where it's like, could I have a lawyer? That means I want one. No, Your Honor. Yes, they have said, can I have a lawyer? And that, in those contexts where it's equivalent to the statement, I want a lawyer, then this court has found. But in the context of, am I allowed to have a lawyer? Then the court has found that that's an ambiguous statement, that it's a question. But the answer is, as the video shows, when Mr. Ho asked his question twice, the answer was that we have to talk to the officer over there. The record shows he did nothing further. At the very least, it seems to me that renders whatever he said before ambiguous, because he was told what needed to be done. He did nothing. He didn't raise the question again. He didn't say, well, I need to talk to that guy because I wanna withdraw my consent. He just sat there. He didn't do anything. How should we view that in terms of whether he, a reasonable person, would interpret the request as being a desire to withdraw consent? And the district court brought up that issue as well. The fact that the defendant didn't say anything, having gotten his response that, yeah, you do have that right, he then didn't make the statement. Can I ask about this though? So this is where the timeline matters, because at least as I see the video, he has been placed in a place between cars where it doesn't seem like he has a view of the other officer or the car. So he asks, can I withdraw consent? The other officer says, we'll have to talk to that guy. I don't think the defendant has any idea that that guy has now later started searching the car because he can't see it, right? He can't see it, but as the district court said, that doesn't relieve him of the burden of having to make a statement in the first place. Well, why though? If he's already withdrawn consent and the question is, how come he's not getting up and yelling when the guy searches the car? Well, isn't the answer he can't see that the guy's searching the car? I think the issue of him not seeing, it's not that he has an obligation to stand up and yell, it's that he has some obligation to follow up an ambiguous statement with a clear statement. I mean, that sort of begs the question of whether the initial statement was ambiguous. And I guess, doesn't the lack of follow up arguably cut the opposite direction, right? Because if the question was, I am curious about how the Fourth Amendment works and I would like to be told, do I have the right to withdraw consent in this situation? Then when he gets an answer, you might expect some follow up, like, okay, I will now consider that or I will or I won't. If what he meant was, I am withdrawing consent, that's all he needs to say, right? He's withdrawing consent. So couldn't you infer from the lack of a follow up that what he meant was, I now withdraw consent, I'm done? I mean, I think the fact that reasonable minds can disagree about what it is he meant means that it's inherently ambiguous. I mean, you just... But I think the point, this is like going back to the menu again. I mean, if the waiter says to you, you can only have rice if you pay an extra dollar, then you have to say whether you want to do it or not. But if the answer seems like something that doesn't require further response, then you don't give a further response, which I think is what Judge Miller is asking. I don't understand why this situation is different than that. I think, again, I don't think it's analogous to the diner context because of that. You don't... Because defendants do give up their rights even after they find out that they have that right. And so you can't then make the assumption that simply because you're asking about it, you necessarily want that right now. Is it the government's position that the very fact that we are here shows that there's ambiguity? Absolutely. My learned colleagues and I are approaching this from different ways with respect to dining, happy meals, and the like, but the reality is it wasn't clear. It was ambiguous. Absolutely. So then the question is, what do we do with that? His granting of the permission in the first place was unambiguous, no question about that. If his response was ambiguous, some would say he was saying, no, I wanna withdraw it. Others would say he just was asking the question and it doesn't follow necessarily. But if it's... If it is ambiguous, is it the government's position that that is not sufficient to revoke his consent? Yes, Your Honor, that's absolutely the government's and also the fact that the district court's finding would be reviewed for clear error, and the district court found that it was ambiguous. Can I ask just one more question, but just to go back to the point that you started with, which is... So your friend on the other side says that in the right to counsel context, we would review de novo whether the words used were effective. And so why do we not do that here? Because it's not simply the words that were stated, it's also... The district court also had to look at the tone of voice, what happened before and afterwards. But that's true, that's true with respect to invocation of counsel too, isn't it? In that... I mean, context matters, tone matters. Right, but in that context, there were case law where they said, are these specific words sufficient to invoke right to counsel? Whereas here, I think the words themselves are ambiguous, and I should point out that in the Younger case, the Ninth Circuit did look at whether or not defendant's statement was ambiguous as a factual finding that's reviewed for clear error. Other questions? Alright, thank you very much. We'll give you a minute to respond, even though you went over your time, because we gave her a little extra time as well. First, I wanted to respond to one of the last points about, well, the fact that we're even having this discussion shows ambiguity, so that's enough. I don't have a listen fund me, but if you look at the right to counsel cases, they're frequently dissents. The fact that there are dissenting opinions about what something means doesn't mean that the majority sometimes doesn't look at it and say, this was unequivocal. So I don't think that's a reason to... Those are the counsel cases, right? Right. And again, we're... We have... My understanding, correct me if I'm wrong, the Ninth Circuit does not currently have a case that addresses these specific facts. Is that correct? I would say that's correct. These very specific facts. Okay, we need law on this. So the question is, where do we get it from? What would the reasonable person understand? Is it ambiguous? Three other circuits say it's gotta be unambiguous, withdrawal. So we're gonna be going against other circuits if we do that. That doesn't matter, because we've done that before the Ninth Circuit. If I may ask, is Your Honor proposing some kind of unequivocal test that's separate and apart from the amino standard? Because like I said, the government doesn't spew through the same, but now it sounds like Your Honor is suggesting adding something on top of it. I'm just asking a question. That's one of my prerogatives. Okay. Okay. Then my position is, there is no unequivocal test. There is an amino test that is sometimes shorthandedly referred to as the unequivocal test, and I don't think the court would be wise to muddy the waters by suggesting there is something otherwise. We'd be muddying them. We'd be clarifying them. Okay. But the question is, which way we do it. Right. Other questions by my colleagues for defense counsel? Thanks. Thank you very much. Both of you for your argument have been very helpful. It's an interesting and difficult case. The case just argued is submitted.
judges: SMITH, FRIEDLAND, MILLER